## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JAMES SOTO                              )
                                        )
                    Plaintiff,          )          Case No. 24-CV-10869
        v.                              )
                                        )          Judge Martha M. Pacold
WILLIAM FOSTER, *et al.*,               )
                                        )          **Jury Trial Demanded**
                    Defendants.         )

## DEFENDANTS OWEN AND SMEETON'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

Defendants Gregg Owen and Jack Smeeton answer Plaintiff's complaint as follows:

## INTRODUCTION

1.      James Soto was wrongfully convicted of a 1981 double murder in Pietrowski Park in Chicago. In 1982, Mr. Soto was sentenced to life without parole. After spending over forty-two years incarcerated for a crime he did not commit, he was exonerated in December 2023.

**ANSWER: Defendants admit that Soto was convicted for a 1981 double murder in Pietrowski Park in Chicago, and that Soto was sentenced to life without parole. Defendants deny the remaining allegations in paragraph 1 of Plaintiff's complaint.**

2.      Mr. Soto had nothing to do with the Pietrowski Park murders, and has always maintained his innocence.

**ANSWER: Defendants deny that Plaintiff had nothing to do with the Pietrowski Park murders. Defendants lack knowledge or information**

sufficient to form a belief about the truth of the remaining allegations in paragraph 2 of Plaintiff's complaint.

3.       Not one piece of physical evidence ever connected Mr. Soto to the crime.

**ANSWER:  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 3 of Plaintiff's complaint.**

4.       The only evidence against Mr. Soto at his trial in 1982 was the coerced and fabricated testimony of Wally Cruz, whom police believed was involved in the crime.

**ANSWER: Defendants deny the allegations in paragraph 4 of Plaintiff's complaint.**

5.       Cruz's fabricated story was demonstrably false.

**ANSWER: Defendants deny the allegations in paragraph 5 of Plaintiff's complaint.**

6.       Defendants knew that Cruz's fabricated story was false.

**ANSWER: Defendants deny the allegations in paragraph 6 of Plaintiff's complaint.**

7.       Unknown to Plaintiff, his counsel, or the prosecutors at the time, Defendants coerced Cruz's fabricated story to inculpate Mr. Soto, and Defendant Officers fabricated police reports to conceal their misconduct.

**ANSWER: Defendants deny the allegations in paragraph 7 of Plaintiff's complaint.**

8.     Defendants caused the arrests of over a dozen witnesses without probable cause and used improper tactics to coerce those witnesses into making false statements to inculpate Mr. Soto.

**ANSWER: Defendants deny the allegations in paragraph 8 of Plaintiff's complaint.**

9.     Defendant Officers then fabricated police reports documenting those coerced false statements and never disclosed these fabrications to the prosecution, to Mr. Soto, or to his counsel.

**ANSWER: Defendants deny the allegations in paragraph 9 of Plaintiff's complaint.**

10.     Defendants built an entirely false case against Mr. Soto by fabricating false evidence and suppressing exculpatory evidence that Mr. Soto could have used to defend himself in the criminal trial against him. As a result, Mr. Soto was convicted of murder.

**ANSWER:   Defendants admit that Plaintiff was convicted of murder. Defendants deny the remaining allegations in paragraph 10 of Plaintiff's complaint.**

11.     Mr. Soto worked tirelessly for years to show that he had absolutely nothing to do with this crime.

**ANSWER:   Defendants deny that Plaintiff had nothing to do with the 1981 double murder.  Defendants lack knowledge or information sufficient**

to form a belief about the truth of the remaining allegations in paragraph 11 of Plaintiff's complaint.

12.     In December 2023, after decades fighting for post-conviction relief, Mr. Soto's conviction was finally vacated. The prosecutors dropped all charges. Forty-two years after this horrific ordeal began, Mr. Soto was exonerated.

**ANSWER: Defendants admit Plaintiff's conviction was vacated in December 2023 and the State dismissed the charges against Plaintiff. Defendants deny the remaining allegations in paragraph 12 of Plaintiff's complaint.**

13.     Mr. Soto now seeks justice for the harm that Defendants caused and redress for the loss of liberty and hardship that he endured and continues to suffer as a result of Defendants' actions.

**ANSWER: Defendants deny the allegations in paragraph 13 of Plaintiff's complaint.**

### JURISDICTION AND VENUE

14.     This action is brought pursuant to 42 U.S.C. § 1983 to redress Defendants' deprivation of Plaintiff's rights secured by the U.S. Constitution.

**ANSWER:   Defendants admit that Plaintiff brought this action under 42 U.S.C. § 1983.  Defendants deny the remaining allegations in paragraph 14 of Plaintiff's complaint.**

15.     This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over his state-law claims pursuant to 28 U.S.C. § 1367.

**ANSWER: Defendants admit the allegations in paragraph 15 of Plaintiff's complaint.**

16.     Venue is proper under 28 U.S.C. § 1391(b). Most or all of the Defendants reside in this judicial district, and the events and omissions giving rise to Plaintiff's claims occurred within this judicial district, including the investigation, prosecution, and trial resulting in Plaintiff's conviction.

**ANSWER:  Defendants admit venue is proper and that the criminal investigation and prosecution of Plaintiff for his involvement in a double murder occurred in this District.   Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 16 of Plaintiff's complaint.**

## PARTIES

17.     Plaintiff James Soto is a 63-year-old Latino man from Chicago who spent 42 years in prison for a crime he did not commit.

**ANSWER:  Defendants deny that Plaintiff was incarcerated for a crime he did not commit.   Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 17 of Plaintiff's complaint.**

18.     While spending over four decades wrongfully incarcerated, Mr. Soto took vocational courses, received college credits, tutored Spanish-speaking peers, worked in the law library, and became a member of the United States Junior Chamber, a leadership training service organization.

**ANSWER: Defendants deny that Plaintiff was wrongfully convicted. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 18 of Plaintiff's complaint.**

19.     In November 2023, a month before he was freed, Mr. Soto graduated *magna cum laude* with his bachelor's degree as part of the first cohort of Northwestern University's prison education program. Mr. Soto currently works as a paralegal and plans to go to law school.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 19 of Plaintiff's complaint.**

20.     At all relevant times, Defendant William C. Foster, Star #3188 was a police detective in the Chicago Police Department ("CPD") acting under color of law and within the scope of his employment for the City of Chicago.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 20 of Plaintiff's complaint.**

21.     At all relevant times, Defendant Ernest M. Hernandez, Star #5388 was a police detective in the CPD acting under color of law and within the scope of his employment for the City of Chicago.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 21 of Plaintiff's complaint.**

22. At all relevant times, Defendant James H. Schmidt, Star #895 was a police officer in the CPD acting under color of law and within the scope of his employment for the City of Chicago.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 22 of Plaintiff's complaint.**

23. At all relevant times, Defendant B. Miller, Star #7854 was a police officer in the CPD acting under color of law and within the scope of his employment for the City of Chicago.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 23 of Plaintiff's complaint.**

24. At all relevant times, Defendant E. Labiak, Star #2350 was a police officer in the CPD acting under color of law and within the scope of his employment for the City of Chicago.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 24 of Plaintiff's complaint.**

25. At all relevant times, Defendant Stephen J. Casto #15489 was a police detective in the CPD acting under color of law and within the scope of his employment for the City of Chicago.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 25 of Plaintiff's complaint.**

26. At all relevant times, Defendant Thomas J. Richardson, Star #3385 was a police officer in the CPD acting under color of law and within the scope of his employment for the City of Chicago.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 26 of Plaintiff's complaint.**

27. At all relevant times, Defendant Thomas Ptak was a police detective in the CPD acting under color of law and within the scope of his employment for the City of Chicago.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 27 of Plaintiff's complaint.**

28. At all relevant times, Defendant Michael F. Duffin was a police detective in the CPD acting under color of law and within the scope of his employment for the City of Chicago.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 28 of Plaintiff's complaint.**

29. At all relevant times, Defendant Richard J. Solita was a police officer in the CPD acting under color of law and within the scope of his employment for the City of Chicago.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 29 of Plaintiff's complaint.**

30. At all relevant times, Defendant Reynaldo Guevara was a police officer in the CPD acting under color of law and within the scope of his employment for the City of Chicago.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 30 of Plaintiff's complaint.**

31. At all relevant times, Defendant R. Johnson, Star #15536, was a police officer in the CPD acting under color of law and within the scope of his employment for the City of Chicago.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 31 of Plaintiff's complaint.**

32. At all relevant times, Defendant Dennis S. Maderak, Star #3251, was a police officer in the CPD acting under color of law and within the scope of his employment for the City of Chicago.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 32 of Plaintiff's complaint.**

33. At all relevant times, Defendant W. Anderson, Star #13003, was a police officer in the CPD acting under color of law and within the scope of his employment for the City of Chicago.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 33 of Plaintiff's complaint.**

34. At all relevant times, Defendant Ivory L. Hampton, Star #7021, was a police officer in the CPD acting under color of law and within the scope of his employment for the City of Chicago.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 34 of Plaintiff's complaint.**

35. At all relevant times, Defendant Anthony J. Pecoraro, Star #2683, was a police officer in the CPD acting under color of law and within the scope of his employment for the City of Chicago.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 35 of Plaintiff's complaint.**

36.     At all relevant times, Defendant Anthony W. Kuta, Star #4527, was a police officer in the CPD acting under color of law and within the scope of his employment for the City of Chicago.

**ANSWER:  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 36 of Plaintiff's complaint.**

37.     At all relevant times, Defendant Roman S. Tapkowski, Star #15665, was a police officer in the CPD acting under color of law and within the scope of his employment for the City of Chicago.

**ANSWER:  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 37 of Plaintiff's complaint.**

38.     At all relevant times, Defendant R. Kurowski, Star #755 was a police sergeant in the CPD acting under color of law and within the scope of his employment for the City of Chicago.

**ANSWER:  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 38 of Plaintiff's complaint.**

39.     At all relevant times, Defendant S. Byczek, Star #9539, was a police officer in the CPD acting under color of law and within the scope of his employment for the City of Chicago.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 39 of Plaintiff's complaint.**

40.     At all relevant times, Defendant Vincent J. Tondryk, Star #3492, was a police officer in the CPD acting under color of law and within the scope of his employment for the City of Chicago.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 40 of Plaintiff's complaint.**

41.     At all relevant times, Defendant Kenneth E. Mann, Star #6725, was a police officer in the CPD acting under color of law and within the scope of his employment for the City of Chicago.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 41 of Plaintiff's complaint.**

42.     At all relevant times, Defendant P. Wilindez, Star #8140, was a police officer in the CPD acting under color of law and within the scope of his employment for the City of Chicago.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 42 of Plaintiff's complaint.**

43.     At all relevant times, Defendant Straza, Star 11807, was a police officer in the CPD acting under color of law and within the scope of his employment for the City of Chicago.

**ANSWER:   Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 43 of Plaintiff's complaint.**

44.     At all relevant times, Defendant Michael L. McMeel, Star #2198, was a police officer in the CPD acting under color of law and within the scope of his employment for the City of Chicago.

**ANSWER:   Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 44 of Plaintiff's complaint.**

45.     At all relevant times, Defendant Evans, Star #12864, was a police officer in the CPD acting under color of law and within the scope of his employment for the City of Chicago.

**ANSWER:   Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 45 of Plaintiff's complaint.**

46.     At all relevant times, Defendant Norbert W. Feret, Star #8550, was a police officer in the CPD acting under color of law and within the scope of his employment for the City of Chicago.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 46 of Plaintiff's complaint.**

47. At all relevant times, Defendant Earl W. Zuelke, Star #4053, was a police officer in the CPD acting under color of law and within the scope of his employment for the City of Chicago.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 47 of Plaintiff's complaint.**

48. At all relevant times, Defendant E. Pickette, Star #12386, was a police officer in the CPD acting under color of law and within the scope of his employment for the City of Chicago.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 48 of Plaintiff's complaint.**

49. At all relevant times, Defendant Phillip Szpicki, Star #4014, was a police officer in the CPD acting under color of law and within the scope of his employment for the City of Chicago.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 49 of Plaintiff's complaint.**

50. At all relevant times, Defendant N. Dub, Star #5243, was a police officer in the CPD acting under color of law and within the scope of his employment for the City of Chicago.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 50 of Plaintiff's complaint.**

51. At all relevant times, Defendant Sgt John T. Regan, Star #1864 was a police detective in the CPD acting under color of law and within the scope of his employment for the City of Chicago. Defendant Regan and other unknown law enforcement officers supervised the Police Officer Defendants, and participated in the misconduct alleged in this complaint and also facilitated, condoned, approved, and turned a blind eye to the misconduct of the Defendants whom Defendant Regan and other unknown law enforcement officers supervised.

**ANSWER: Defendants deny any defendant engaged in any misconduct involving Plaintiff. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 51 of Plaintiff's complaint.**

52. Defendants Foster, Hernandez, Schmidt, Miller, Labiak, Casto, Richardson, Ptak, Duffin, Solita, Guevara, Johnson, Maderak, Anderson, Hampton, Pecoraro, Kuta, Tapkowski, Kurowski, Byczek, Tondryk, Mann, Wilindez, Straza, McMeel, Evans, Feret, Regan, and other as- yet unidentified police officers are referred to collectively as "Defendant Officers."

**ANSWER: Paragraph 52 of Plaintiff's complaint does not contain an allegation, and thus, no answer is required.**

53. At all relevant times, Defendant Gregg Owen was an Assistant State's Attorney with the Gang Crimes Unit of the Cook County State's Attorney's Office ("CCSAO"). He is sued for actions he undertook, in conspiracy with Defendant Officers, as an investigator and without probable cause to believe that Plaintiff had committed any crime. He acted under color of law and within the scope of his employment for the CCSAO.

**ANSWER: Defendants admit that at all relevant times, Gregg Owen was an Assistant State's Attorney in the Gang Crimes Unit of the Cook County State's Attorney's Office. Defendants deny the remaining allegations in paragraph 53 of Plaintiff's complaint.**

54. At all relevant times, Defendant Timothy McMahon was an Assistant State's Attorney with the Gang Crimes Unit of the CCSAO. He is sued for actions he undertook, in conspiracy with Defendant Officers, as an investigator and without probable cause to believe that Plaintiff had committed any crime. He acted under color of law and within the scope of his employment for the CCSAO.

**ANSWER: Defendants admit that at all relevant times, Timothy McMahon was an Assistant State's Attorney in the Gang Crimes Unit of the Cook County State's Attorney's Office. Defendants deny the remaining allegations in paragraph 54 of Plaintiff's complaint.**

55.     At all relevant times, Defendant Jack Smeeton was an Assistant State's Attorney with the Gang Crimes Unit of the CCSAO. He is sued for actions he undertook, in conspiracy with Defendant Officers, as an investigator and without probable cause to believe that Plaintiff had committed any crime. He acted under color of law and within the scope of his employment for the CCSAO.

**ANSWER:  Defendants admit that at all relevant times, Jack Smeeton was an Assistant State's Attorney in the Gang Crimes Unit of the Cook County State's Attorney's Office.  Defendants deny the remaining allegations in paragraph 55 of Plaintiff's complaint.**

56.     Defendants Owen, McMahon, and Smeeton are referred to collectively as "ASA Defendants."

**ANSWER:  Paragraph 56 of Plaintiff's complaint does not contain an allegation, and thus, no answer is required.**

57.     Defendant City of Chicago ("the City") is a municipal corporation that is or was the employer of the above-named Defendant Officers. Each of the Defendant Officers acted during their investigation as agents or employees of the City. The City is liable based on *respondent superior* for the acts of Defendant Officers. The City is additionally responsible for the policies and practices of the CPD.

**ANSWER:  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 57 of Plaintiff's complaint.**

58.     Defendant Cook County ("the County") is a governmental entity within the State of Illinois, which provides funding for the CCSAO and was at all relevant times the employer of Defendants Owen, McMahon, and Smeeton. The County is a necessary party to this lawsuit and is responsible for paying any judgment entered against Defendants Owen, McMahon, and Smeeton.

**ANSWER: Defendants deny that any defendant engaged in misconduct involving Plaintiff that qualifies any party as a necessary party to this lawsuit. Defendants further deny they were employed by the County during the relevant time period. Defendants admit the County is responsible for paying any judgment entered against the ASA Defendants.**

59.     Each individual Defendant is sued in his or her individual capacity.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 59 of Plaintiff's complaint.**

## FACTS

### The Murders in Pietrowski Park

60.     On August 16, 1981, at around 9:30 p.m., a vehicle pulled up on a crowd in Pietrowski Park, a park on the southwest side of Chicago, firing shots. The shooters injured one and killed two others: a sixteen-year-old girl and a United States Marine who was home on leave.

**ANSWER: Defendants admit that a shooting occurred in Pietrowski Park on the evening of August 16, 1981 that injured one person and killed two others. Defendants lack knowledge or information sufficient to form a**

**belief about the truth of the remaining allegations in paragraph 60 of Plaintiff's complaint.**

61.    Investigators interviewed over 30 witnesses at the park, none of whom ever connected Mr. Soto to this crime.

**ANSWER:   Defendants deny that Plaintiff was never connected to the murders. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 61 of Plaintiff's complaint.**

62.    Eyewitnesses described a blue van and two shooters from within firing from a gangway beside the park – one with a rifle and one with a handgun.

**ANSWER:   Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 62 of Plaintiff's complaint.**

63.    In the immediate aftermath of the shooting, witnesses named two perpetrators: 16- year-old Victor "Fat Victor" Rodriguez, and 22-year-old John "J.J." Rojas.

**ANSWER:   Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 63 of Plaintiff's complaint.**

64.    Several eyewitnesses told investigators that Rodriguez was the handgun shooter, whom they recognized. Rodriguez was listed in initial reports as a presumed assailant.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 64 of Plaintiff's complaint.**

65.     Eyewitnesses also mentioned that they saw Rojas driving the blue van. Rojas left the city after the shooting.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 65 of Plaintiff's complaint.**

66.     Reports also mentioned other possible suspects, including the prosecution's star witness, Wally "Gator" Cruz. Cruz had heard the police were looking for him and also fled the state.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 66 of Plaintiff's complaint.**

67.     In sharp contrast, there was no mention of Mr. Soto anywhere in any of the contemporaneous reports of the shooting. No eyewitness saw Mr. Soto at the scene or ever suggested that he was one of the shooters.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 67 of Plaintiff's complaint.**

68.     At the time of his arrest, Mr. Soto had no criminal history, was a high school graduate, and had been working for United Parcel Service since he graduated from high school.

**ANSWER:  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 68 of Plaintiff's complaint.**

### Without Investigative Success, Defendants Turn to Cruz

69.     In early October, after weeks of no investigative success, Defendants Foster and Hernandez, the lead detectives of this investigation, faced increasing pressure to act.

**ANSWER:  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 69 of Plaintiff's complaint.**

70.     On October 5, 1981, Defendants Foster and Hernandez secured the arrest of "Fat Victor" Rodriguez and stamped their report "cleared and closed." But Rodriguez had been charged as a juvenile, and a juvenile court judge refused to grant a prosecution motion to move the case to adult court. The case against Rodriguez did not proceed.

**ANSWER:  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 70 of Plaintiff's complaint.**

71.     Turning to other avenues for closing the case, on or about October 14, 1981, Defendant Officers Foster, Hernandez, Schmidt, Miller, Labiak, Casto,

Richardson, Ptak, and Duffin met with high ranking officials in the CCSAO to formulate a plan to implicate Mr. Soto and his cousin, David Ayala.

**ANSWER: Defendants deny the allegations in paragraph 71 of Plaintiff's complaint.**

72.    Defendant Gregg Owen, then-Chief of the Gang Prosecutions Unit, and Defendant Jack Smeeton attended this meeting with Defendant Officers.

**ANSWER: Defendants deny the allegations in paragraph 72 of Plaintiff's complaint.**

73.    During the meeting, the Defendant Officers and ASA Defendants Smeeton and Owen agreed to coerce Wally "Gator" Cruz into testifying falsely against Mr. Soto and his cousin Ayala to frame them for the Pietrowski Park murders.

**ANSWER: Defendants deny the allegations in paragraph 73 of Plaintiff's complaint.**

74.    To conceal their plot, Defendant Officers withheld all reports concerning the content of their October 14, 1981 meeting with Defendants Owen and Smeeton deciding to target Mr. Soto and Ayala.

**ANSWER: Defendants deny the allegations in paragraph 74 of Plaintiff's complaint.**

75.    On or around October 15, Defendants Foster and Hernandez contacted Cruz about meeting with Defendants Foster, Hernandez, Smeeton, and Owen at 26th and California, in the office of the Gang Prosecutions Unit.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 75 of Plaintiff's complaint**

76.     Defendants Foster, Hernandez, Owen, and Smeeton then intimidated Cruz into agreeing to testify falsely against Mr. Soto and Ayala.

**ANSWER: Defendants deny the allegations in paragraph 76 of Plaintiff's complaint.**

77.     Defendants Foster, Hernandez, Owen, and Smeeton forced Wally Cruz to fabricate a false account concocted by Defendants of what transpired on August 16, 1981, implicating over a dozen people.

**ANSWER: Defendants deny the allegations in paragraph 77 of Plaintiff's complaint.**

78.     These Defendants forced Cruz to falsely claim that, on the day of the shooting, there was a gang meeting in the basement of David Ayala's house, and Ayala ordered that the gang shoot up the park because members of the Latin Kings were present.

**ANSWER: Defendants deny the allegations in paragraph 78 of Plaintiff's complaint.**

79.     Defendants Foster, Hernandez, Owen, and Smeeton also forced Cruz to falsely claim that David Ayala gave Ruben Palomo a rifle and Mr. Soto a handgun, and that Palomo told Cruz to drive him and Mr. Soto to the park where the shooting took place.

**ANSWER: Defendants deny the allegations in paragraph 79 of Plaintiff's complaint.**

80.     Finally, due to the coercion of Cruz by Defendants Foster, Hernandez, Owen, and Smeeton, Cruz was forced to falsely claim that he let Mr. Soto and Palomo into an alley near the park, after which he heard gunshots, and the two ran back to the van saying they might have hit somebody.

**ANSWER: Defendants deny the allegations in paragraph 80 of Plaintiff's complaint.**

81.     The story that Defendants Foster, Hernandez, Owen, and Smeeton fed to Cruz was demonstrably false. Witnesses who supposedly attended the meeting could not have been there, a problem which the Defendants either knew or could have known with minimal investigation.

**ANSWER: Defendants deny the allegations in paragraph 81 of Plaintiff's complaint.**

82.     Not one of the individuals that Defendants Foster, Hernandez, Owen, and Smeeton coerced Cruz into falsely claiming was at Ayala's house and attended a gang meeting on the day of the shooting ever confirmed Cruz's fabricated story.

**ANSWER: Defendants deny the allegations in paragraph 82 of Plaintiff's complaint.**

83.     Defendants knew that the fabricated story that Defendants Foster, Hernandez, Owen, and Smeeton fed to Cruz was false.

**ANSWER: Defendants deny the allegations in paragraph 83 of Plaintiff's complaint.**

84.    Defendant Officers documented this fabricated account in their police reports. They never disclosed to the prosecutors, defense, or to Mr. Soto that this account was fabricated, nor did they reveal that they fed Cruz the narrative they wanted to create or the means they used to coerce him to comply.

**ANSWER: Defendants deny the allegations in paragraph 84 of Plaintiff's complaint.**

85.    The only witness ever to inculpate Mr. Soto – during the pretrial investigation or at the trial itself—was Wally Cruz.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 85 of Plaintiff's complaint.**

86.    Despite police interviews with dozens of eyewitnesses and over thirty people present at the park during the shooting, Cruz is the only person who ever claimed to have seen Mr. Soto at the park the night of the shooting and the only person who ever claimed that Mr. Soto was the shooter.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 86 of Plaintiff's complaint.**

## The Round-Up and Interrogations to Frame Mr. Soto

87. After coercing Cruz's cooperation, Defendants designed a plan to arrest and coerce every person referenced in Cruz's false account of what transpired on August 16, 1981 into making false statements to cement their fabricated story.

**ANSWER: Defendants deny the allegations in paragraph 87 of Plaintiff's complaint.**

88. Defendant Officers arrested Mr. Soto, David Ayala, and at least a dozen others whom Cruz falsely claimed were involved in the August 16, 1981 gang meeting. They made these arrests without probable cause.

**ANSWER: Defendants admit that Plaintiff, Ayala, and others were arrested. Defendants deny the remaining allegations in paragraph 88 of Plaintiff's complaint.**

89. One of more of Defendants, including Defendant Officers Foster, Hernandez, Schmidt, Miller, Labiak, Casto, Richardson, Ptak, Duffin, Solita, Guevara, Johnson, Maderak, Anderson, Hampton, Pecoraro, Kuta, Tapkowski, Kurowski, Byczek, Tondryk, Mann, Wilindez, Straza, McMeel, Evans, Feret, Zuelke, Pickette, Szpicki, Dub, and Regan, and ASA Defendants Smeeton, McMahon, and Owen, acting as investigators, used threats of harm and criminal charges to coerce over a dozen witnesses to provide false statements that would corroborate the initial fabricated story fed to Cruz by Defendants, knowing full well that they were fabricating false evidence which would result in Mr. Soto's wrongful prosecution and conviction.

**ANSWER: Defendants deny the allegations in paragraph 89 of Plaintiff's complaint.**

90.     Defendants listed in the above-referenced paragraph arrested and held over a dozen witnesses without access to counsel or family, did not inform them of their rights, physically beat them, deprived them of sleep and food, harassed them, and threatened them in order to coerce their testimony against Mr. Soto.

**ANSWER: Defendants deny the allegations in paragraph 90 of Plaintiff's complaint.**

91.     Even before her arrest on October 16, 1981, one or more of Defendant Officers, including Defendants Foster, Hernandez, Richardson, and Solita, had been harassing and threatening Isabel Gomez into giving false testimony to inculpate Mr. Soto. Every few days, these Defendant Officers threatened Isabel Gomez to try to intimidate her into cooperating.

**ANSWER: Defendants deny the allegations in paragraph 91 of Plaintiff's complaint.**

92.     When witnesses refused to cooperate, Defendant Officers and ASA Defendants made threats to try to intimidate them into cooperating, including threats of false charges.

**ANSWER: Defendants deny the allegations in paragraph 92 of Plaintiff's complaint.**

93.     Defendant Officers and ASA Defendants never disclosed this mistreatment of witnesses during their interrogations, and Defendant Officers withheld all police reports documenting their coercive and improper tactics.

**ANSWER: Defendants deny the allegations in paragraph 93 of Plaintiff's complaint.**

94.     These witnesses subsequently averred in affidavits that the Defendants were attempting to force them to falsely corroborate a supposed gang meeting on August 16, 1981, and to inculpate Mr. Soto or David Ayala, or both.

**ANSWER: Defendants deny that anyone was forced to falsely corroborate a gang meeting on August 16, 1981, and to falsely inculpate Plaintiff and/or Ayala. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 94 of Plaintiff's complaint.**

95.     Defendant Officers, including Defendants Foster and Hernandez, wrote false narratives of what transpired during these interrogations in police reports and suppressed the abusive and coercive tactics Defendants used to intimidate witnesses into giving false testimony that inculpated Mr. Soto.

**ANSWER: Defendants deny the allegations in paragraph 95 of Plaintiff's complaint.**

96.     Based on the evidence fabricated by Defendants, Mr. Soto was charged with the double murder.

**ANSWER:   Defendants admit that Plaintiff was charged with a double murder.  Defendants deny the remaining allegations in paragraph 96 of Plaintiff's complaint.**

97.     There was never any probable cause to suspect Mr. Soto of the murders at Pietrowski Park.

**ANSWER: Defendants deny the allegations in paragraph 97 of Plaintiff's complaint.**

### Coerced and Incentivized Trial Testimony

98.     In September 1982, Ayala, Mr. Soto, and Palomo went to trial.

**ANSWER: Defendants admit the allegations in paragraph 98 of Plaintiff's complaint.**

99.     Cruz provided the only trial testimony falsely implicating Mr. Soto and Ayala.

**ANSWER:   Defendants deny that Cruz falsely implicated Plaintiff and Ayala.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 99 of Plaintiff's complaint.**

100.    Not one of the individuals that Cruz claimed was at David Ayala's house the night of the crime corroborated his fabrications.

**ANSWER:  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 100 of Plaintiff's complaint.**

101.    In fact, no other witness than Cruz implicated Mr. Soto in the crime.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 101 of Plaintiff's complaint.**

102. Instead, multiple witnesses testified to refute Cruz's coerced and false account.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 102 of Plaintiff's complaint.**

103. Palomo, who later pled guilty to one count of murder for the shooting at the park, has also sworn that he did not attend any supposed meeting at Ayala's house on the day of the shooting nor did he take any orders from Ayala or Mr. Soto.

**ANSWER: Defendants admit Palomo pled guilty to murder for his involvement in the Pietrowski Park shooting. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 103 of Plaintiff's complaint.**

104. Other witnesses have also sworn that Wally Cruz admitted that he was intimidated by Defendants into lying to inculpate Mr. Soto and his co-defendant Ayala. In particular, Cruz's cousin and friend, Joseph Cruz, averred that Cruz repeatedly talked to him about being forced to falsely inculpate Mr. Soto and Ayala.

**ANSWER: Defendants deny that Cruz was intimidated into inculpating Plaintiff and Ayala. Defendants lack knowledge or information**

**sufficient to form a belief about the truth of the remaining allegations in paragraph 104 of Plaintiff's complaint.**

### Suppression of Evidence of Misconduct and Exculpatory Information

105. Throughout the State's prosecution, Defendant Officers withheld material exculpatory and impeachment evidence from the trial prosecution as well as Mr. Soto and his defense team, including the evidence of their own misconduct.

**ANSWER: Defendants deny the allegations in paragraph 105 of Plaintiff's complaint.**

106. Defendant Officers did not disclose, among other things, their fabrication of evidence to Mr. Soto, his counsel, or the prosecutors, in advance of or at the time of the criminal trial.

**ANSWER: Defendants deny the allegations in paragraph 106 of Plaintiff's complaint.**

107. Defendant Officers used false police reports to cover up their actions. They provided those false reports to prosecutors, and their fabricated evidence became the basis for charging and prosecuting Mr. Soto.

**ANSWER: Defendants deny the allegations in paragraph 107 of Plaintiff's complaint.**

108. Defendant Officers also gave false statements to trial prosecutors.

**ANSWER: Defendants deny the allegations in paragraph 108 of Plaintiff's complaint.**

109. Mr. Soto's arrest and prosecution was based solely on the evidence fabricated by Defendants and thereafter suppressed by Defendant Officers.

**ANSWER: Defendants deny the allegations in paragraph 109 of Plaintiff's complaint.**

110. Absent Defendants' misconduct, Mr. Soto would never have been arrested, prosecuted, or convicted.

**ANSWER: Defendants deny the allegations in paragraph 110 of Plaintiff's complaint.**

## Plaintiff's Wrongful Conviction

111. On September 30, 1982, Mr. Soto and Ayala were convicted on all charges.

**ANSWER: Defendants admit the allegations in paragraph 111 of Plaintiff's complaint.**

112. Soto was sentenced to two life-without-parole sentences for the murder convictions, thirty years' incarceration for the attempt murder, and seven years for the conspiracy.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 112 of Plaintiff's complaint.**

113. The foreseeable consequence of Defendants' actions was that Mr. Soto would be wrongfully convicted of the shooting. Indeed, the very purpose of Defendants' actions was to frame Mr. Soto, an innocent man, for a crime he did not commit.

**ANSWER: Defendants deny the allegations in paragraph 113 of Plaintiff's complaint.**

114.   In addition, upon information and belief, Defendant Officers suppressed and destroyed additional evidence still unknown to Mr. Soto, which would have been exculpatory, impeaching, or shown Plaintiff's innocence.

**ANSWER: Defendants deny the allegations in paragraph 114 of Plaintiff's complaint.**

### Plaintiff's Exoneration

115.   Mr. Soto has always maintained his innocence and has pursued all legal avenues to prove it.

**ANSWER:  Defendants deny that Plaintiff is innocent of the crimes for which he was convicted.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 115 of Plaintiff's complaint.**

116.   On December 14, 2023, after years of post-conviction advocacy by Mr. Soto, the Cook County State's Attorney's Office asked the court to vacate Mr. Soto's conviction. All charges were dropped.

**ANSWER: Defendants admit the Cook County State's Attorney's Office agreed to drop the charges against Plaintiff.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 116 of Plaintiff's complaint.**

117.   Mr. Soto was released that day.

**ANSWER: Defendants admit Plaintiff was released from prison. Defendants lack knowledge or information sufficient to form a belief about**

the truth of the remaining allegations in paragraph 117 of Plaintiff's complaint.

118.    James Soto and David Ayala had each spent over 42 years in custody from the date of their arrests. At the time of their release, they had been wrongly incarcerated longer than any other Illinois exoneree.

**ANSWER:   Defendants deny that Plaintiff and Ayala were wrongfully convicted of the 1981 double murder.   Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 118 of Plaintiff's complaint.**

### The City of Chicago's Policies, Practices, and Customs Caused James Soto's Wrongful Conviction

119.    The City is responsible, by virtue of its policies, practices, and customs, for inflicting miscarriages of justice in scores of incidents like the one Mr. Soto endured.

**ANSWER:   Defendants deny that any of the defendants engaged in misconduct involving Plaintiff.   Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 119 of Plaintiff's complaint.**

120.    In the early 1980s, City of Chicago final policymakers were made aware that police officers were engaged in an unconstitutional pattern of suppressing investigative materials through two cases: *Palmer v. City of Chicago* and *Jones v. City of Chicago*. In April 1982, Chicago officials, including Chicago Police Department Superintendent Richard Brzeczek, became aware of the circumstances of a 1981

homicide investigation that resulted in charges being brought against George Jones, and the unconstitutional evidence suppression practice that caused his wrongful prosecution.

**ANSWER: Defendants deny that any of the defendants engaged in misconduct involving Plaintiff. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 120 of Plaintiff's complaint.**

121. In *Jones*, Detective Frank Laverty developed strong evidence that Jones could not have committed the murder. But, as stated by the Seventh Circuit, this evidence was placed "not in the police department's regular files but in its 'street files.' These were files that the police did not turn over to the state's attorney's office as they did with their regular investigative files." *Jones v. City of Chicago*, 856 F.2d 985, 995-96 (7th Cir. 1988).

**ANSWER: Defendants deny that any of the defendants engaged in misconduct involving Plaintiff. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 121 of Plaintiff's complaint.**

122. In the spring of 1982, Detective Laverty learned that Jones was on trial for the murder; he told his Commander that an innocent person was being prosecuted, but his Commander took no action; and Laverty then informed Jones's criminal defense attorney about the information in the undisclosed file. The court declared a mistrial, and the State's Attorney dropped all charges against Jones. Jones then filed

a civil lawsuit stemming from the withholding of important investigative information in an undisclosed file, resulting in his wrongful prosecution. His case resulted in a jury verdict finding a custom of maintaining documents with important investigative material that were withheld from the State's Attorney's Office and criminal defendants.

**ANSWER: Defendants deny that any of the defendants engaged in misconduct involving Plaintiff. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 122 of Plaintiff's complaint.**

123.    In 1988, in *Jones v. City of Chicago*, 856 F. 2d 985 (7th Cir. 1988), the Seventh Circuit affirmed the jury verdict in favor of George Jones, including the finding that the City of Chicago had maintained an unconstitutional practice of evidence suppression, permitting detectives to keep important investigative information undisclosed to criminal defendants.

**ANSWER: Defendants deny that any of the defendants engaged in misconduct involving Plaintiff. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 123 of Plaintiff's complaint.**

124.    In April 1982, shortly after the Laverty revelations about the non-disclosure of important investigative materials, a class action lawsuit called *Palmer v. City of Chicago* was filed to challenge the use of informal files to suppress investigative materials, and, days later, the Honorable Judge McMillen issued a

36

temporary restraining order requiring the CPD to preserve all investigative materials not included in formal police files. By September 1982, the action was transferred to the docket of the Honorable Milton Shadur, who thereafter granted a preliminary injunction on the matter.

**ANSWER: Defendants deny that any of the defendants engaged in misconduct involving Plaintiff. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 124 of Plaintiff's complaint.**

125. At this time, there was a citywide practice of using a "decentralized" file system for homicide investigations, whereby investigative steps were being documented in informal notes and internal to-from memoranda between investigators, all of which were treated as the personal property of the investigators and were stored in parallel files not subject to disclosure. The information in the memos and notes was not making it into official reports. In addition, official reports often were not written right away, and instead were written only once they had settled on a suspect, at which point investigators might consider alternate suspects and other evidence to be non-pertinent. As a result, entire branches of an investigation, including investigation into alternate suspects, were not getting documented in official reports, and were instead sitting in memos and notes that were not disclosed and eventually destroyed once an investigation was complete.

**ANSWER: Defendants deny that any of the defendants engaged in misconduct involving Plaintiff. Defendants lack knowledge or information**

**sufficient to form a belief about the truth of the remaining allegations in paragraph 125 of Plaintiff's complaint.**

126.   Indeed, these cases established that, at the time of Mr. Soto's investigation in 1981 and resulting conviction in 1982, there was a policy and practice of suppressing exculpatory and/or impeaching material in clandestine files at all relevant times, including at the Area Four Detective Division during the investigation into the Pietrowski Park murders.

**ANSWER:   Defendants deny that any of the defendants engaged in misconduct involving Plaintiff.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 126 of Plaintiff's complaint.**

127.   Since 1981, at least 150 cases have come to light in which Chicago police officers fabricated false evidence or suppressed exculpatory evidence to cause the convictions of an innocent person for serious crimes they did not commit.

**ANSWER:   Defendants deny that any of the defendants engaged in misconduct involving Plaintiff.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 127 of Plaintiff's complaint.**

128.   In addition, the City routinely used illegal tactics, including torture, physical coercion, and psychological coercion, to extract involuntary and false confessions and statements from suspects and witnesses. There are well over 250 documented cases of Chicago police officers using torture and coercion to illegally

obtain confessions in homicide cases. The City had notice of this widespread practice of procuring false and coerced statements at the time of the events at issue in this case.

**ANSWER: Defendants deny that any of the defendants engaged in misconduct involving Plaintiff. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 128 of Plaintiff's complaint.**

129. In addition, the City routinely failed to investigate cases in which Chicago police detectives recommended charging an innocent person with a serious crime, and no Chicago police officer has ever been disciplined as a result of his misconduct in any of those cases.

**ANSWER: Defendants deny that any of the defendants engaged in misconduct involving Plaintiff. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 129 of Plaintiff's complaint.**

130. Before and during the period in which Mr. Soto was falsely charged with and convicted of murder, the City also knowingly operated a dysfunctional disciplinary system for Chicago police officers accused of serious misconduct. The City almost never imposed significant discipline against police officers accused of violating the civil and constitutional rights of members of the public. Further, the City's disciplinary apparatus had no mechanism for identifying police officers who were repeatedly accused of engaging in misconduct.

**ANSWER: Defendants deny that any of the defendants engaged in misconduct involving Plaintiff. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 130 of Plaintiff's complaint.**

131. As a result, Chicago police detectives and their supervisors were able to engage in rampant misconduct with impunity, and as a result caused scores of wrongful convictions just in Area Four, where Defendant Officers were assigned, and hundreds more City-wide.

**ANSWER: Defendants deny that any of the defendants engaged in misconduct involving Plaintiff. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 131 of Plaintiff's complaint.**

132. The City also failed in the years prior to Soto's conviction to provide adequate training to Chicago police detectives and other officers in many areas, including the following:

    a.    The need to refrain from physical and psychological abuse, and manipulative and coercive conduct, in relation to suspects and witnesses;

    b.    The constitutional requirement to preserve and disclose exculpatory evidence, including how to identify such evidence and what steps to take when exculpatory evidence has been identified in order to ensure that the evidence is made part of the criminal proceeding;

      c.     The conduct of live lineup, photographic, and other identification procedures;

      d.     The risks of wrongful conviction and the steps police officers should take to minimize risks;

      e.     The risks of engaging in tunnel vision during investigation; and

      f.     The need for full disclosure, candor, and openness on the part of all officers who participate in the police disciplinary process, both as witnesses and as accused officers, and the need to report misconduct committed by fellow officers.

**ANSWER: Defendants deny that any of the defendants engaged in misconduct involving Plaintiff. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 132, including subparts a-f, of Plaintiff's complaint.**

133.    The need for police officers to be trained in these areas was and remains obvious. The City's failure to train Chicago police officers as alleged in the preceding paragraph caused Soto's wrongful conviction and his injuries.

**ANSWER: Defendants deny that any of the defendants engaged in misconduct involving Plaintiff. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 133 of Plaintiff's complaint.**

134.    The City also failed to appropriately supervise its officers. The United States Department of Justice ("DOJ") issued a report finding that there were

"engrained deficiencies in the systems CPD uses to provide officers with supervision and training," and the deficiencies mirror those alleged here. In addition, the DOJ "confirmed that CPD's accountability systems are broadly ineffective at deterring or detecting misconduct, and at holding officers accountable when they violate the law or CPD policy." In particular, the DOJ found that the City failed to investigate nearly half of misconduct complaints. Where investigations did occur, there were "consistent patterns of egregious investigative deficiencies," and where misconduct complaints were sustained, discipline was inconsistent and unpredictable.

**ANSWER: Defendants deny that any of the defendants engaged in misconduct involving Plaintiff. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 134 of Plaintiff's complaint.**

135. Since before Mr. Soto's arrest and continuing for years afterward, municipal policymakers and department supervisors condoned and facilitated a code of silence within the CPD. In accordance with this code, officers refused to report and otherwise lied about misconduct committed by their colleagues, including the misconduct at issue in this case.

**ANSWER: Defendants deny that any of the defendants engaged in misconduct involving Plaintiff. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 135 of Plaintiff's complaint.**

136. Numerous municipal policymakers have even admitted the code of silence exists.

**ANSWER: Defendants deny that any of the defendants engaged in misconduct involving Plaintiff. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 136 of Plaintiff's complaint.**

137. The City practices that enable this belief include failing to track and identify police officers who are repeatedly accused of serious misconduct, failing to investigate cases in which the police are implicated in a wrongful charge or conviction, failing to discipline officers accused of serious misconduct, and facilitating a code of silence within the CPD. As a result of these practices, members of the CPD act with impunity when they violate the constitutional and civil rights of citizens, knowing the City's lack of discipline and supervision and its code of silence will protect them.

**ANSWER: Defendants deny that any of the defendants engaged in misconduct involving Plaintiff. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 137 of Plaintiff's complaint.**

138. Defendant Officers engaged in the misconduct described herein because they had no reason to fear that the City would ever discipline them for doing so.

**ANSWER: Defendants deny that any of the defendants engaged in misconduct involving Plaintiff. Defendants lack knowledge or information**

**sufficient to form a belief about the truth of the remaining allegations in paragraph 138 of Plaintiff's complaint.**

139.   Part and parcel with this history of fostering egregious misconduct, the CPD has a long history of using physically and psychologically coercive interrogation tactics in order to elicit statements from witnesses and suspects in criminal cases, which has caused false confessions and led to wrongful convictions.

**ANSWER:  Defendants deny that any of the defendants engaged in misconduct involving Plaintiff.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 139 of Plaintiff's complaint.**

140.   This history goes back at minimum to the 1980s and continued well into the 2000s and includes the conduct of infamous Chicago police detectives, including Jon Burge, Michael McDermott, Kenneth Boudreau, Kriston Kato, Reynaldo Guevara, and many others. For instance, Defendant Guevara has framed dozens of other innocent men and women over the span of two decades. Like Plaintiff, these men and women have lodged independent accusations of similar misconduct against Defendant Guevara.

**ANSWER:  Defendants deny that any of the defendants engaged in misconduct involving Plaintiff.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 140 of Plaintiff's complaint.**

141.    As of the filing of this complaint, at least 47 men and women have had their convictions thrown out because of Defendant Guevara's misconduct. They are Jacques Rivera, Juan Johnson, Jose Montanez, Armando Serrano, Jorge Pacheco, Roberto Almodovar, William Negron, Jose Maysonet, Angel Rodriguez, Santos Flores, Arturo DeLeon-Reyes, Gabriel Solache, Ariel Gomez, Xavier Arcos, Ricardo Rodriguez, Robert Bouto, Thomas Sierra, Geraldo Iglesias, Demetrius Johnson, David Gecht, Richard Kwil, Ruben Hernandez, Juan Hernandez, Rosendo Hernandez, David Lugo, Carlos Andino, Daniel Rodriguez, Jaime Rios, Jose Cruz, Marilyn Mulero, Nelson Gonzalez, Johnny Flores, Adolfo Rosario, Eruby Abrego, Jeremiah Cain, Edwin Davila, Alfredo Gonzalez, Gamalier Rivera, Madeline Mendoza, John Martinez, Thomas Kelly, Jose Tinajero, Louis Robinson, Fabian Santiago, Oscar Soto, Tony Gonzalez, and Edwin Ortiz. Collectively, these men and women served hundreds of years in prison for crimes they did not commit.

**ANSWER:  Defendants deny that any of the defendants engaged in misconduct involving Plaintiff.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 141 of Plaintiff's complaint.**

142.    Defendant Guevara has a long history of engaging in precisely the kind of investigative misconduct that occurred in this case, including (a) manipulating witnesses, (b) fabricating evidence, (c) suppressing exculpatory information, including fabricated information, (d) coercing false confessions and false statements from suspects and witnesses using physical and psychological violence, and (e) using

other unlawful tactics to secure the arrest, prosecution, and conviction of persons, without regard to their actual guilt.

**ANSWER: Defendants deny that any of the defendants engaged in misconduct involving Plaintiff. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 142 of Plaintiff's complaint.**

143.    In addition to the cases in which individuals have been exonerated, there are dozens of other identified cases in which Defendant Guevara engaged in serious investigative misconduct.

**ANSWER: Defendants deny that any of the defendants engaged in misconduct involving Plaintiff. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 143 of Plaintiff's complaint.**

144.    Given this extensive history of misconduct and the City of Chicago's failure to meaningfully supervise or discipline Guevara and others, it is apparent that Guevara engaged in such misconduct because he had every reason to believe that the City of Chicago and its Police Department condoned his behavior.

**ANSWER: Defendants deny that any of the defendants engaged in misconduct involving Plaintiff. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 144 of Plaintiff's complaint.**

145.     Repeatedly, Defendant Guevara has invoked his Fifth Amendment right to not answer questions about allegations against him because truthful responses could subject him to criminal liability. The allegations Defendant Guevara has refused to respond to include allegations that he has manipulated dozens of witnesses to provide false identifications, he has fabricated false evidence, he has suppressed exculpatory evidence, including documentary evidence, he has tortured and abused suspects and witnesses and has coerced false statements from them.

**ANSWER:  Defendants deny that any of the defendants engaged in misconduct involving Plaintiff.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 145 of Plaintiff's complaint.**

146.     Defendant Guevara never received discipline from the City of Chicago or the Chicago Police Department for any of the conduct set out above.

**ANSWER:  Defendants deny that any of the defendants engaged in misconduct involving Plaintiff.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 146 of Plaintiff's complaint.**

147.     In fact, the City of Chicago failed to supervise or discipline its police officers, including Defendant Officers in this case. Defendant Officers engaged in the misconduct set forth in this complaint because they knew that the City of Chicago and its Police Department tolerated and condoned such conduct.

**ANSWER: Defendants deny that any of the defendants engaged in misconduct involving Plaintiff. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 147 of Plaintiff's complaint.**

148. In 2019, the Federal Bureau of Investigation ("FBI") and DOJ confirmed that CPD supervisor Jon Burge was aware that on numerous occasions, detectives he was supervising participated in the psychological and physical abuse of persons being questioned.

**ANSWER: Defendants deny that any of the defendants engaged in misconduct involving Plaintiff. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 148 of Plaintiff's complaint.**

149. Furthermore, CPD officers systematically suppressed exculpatory and impeaching material by concealing evidence that a witness was coerced, manipulated, threatened, pressured, or offered inducements to make false statements.

**ANSWER: Defendants deny that any of the defendants engaged in misconduct involving Plaintiff. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 149 of Plaintiff's complaint.**

150. The City's failure to train, supervise, and discipline its officers, including Defendant Officers, condones, ratifies, and sanctions the kind of misconduct that Defendants committed against Mr. Soto in this case. Constitutional violations

such as those that occurred in this case are encouraged and facilitated as a result of the City's practices and de facto polices, as alleged above.

**ANSWER: Defendants deny that any of the defendants engaged in misconduct involving Plaintiff. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 150 of Plaintiff's complaint.**

151. The City and final policymaking officials within the CPD failed to act to remedy the patterns of abuse described in the preceding paragraphs despite actual knowledge of the pattern of misconduct. They thereby perpetuated the unlawful practices and ensured that no action would be taken (independent of the judicial process) to remedy Soto's ongoing injuries.

**ANSWER: Defendants deny that any of the defendants engaged in misconduct involving Plaintiff. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 151 of Plaintiff's complaint.**

152. The policies and practices described in the foregoing paragraphs were also approved by final policymakers for the City, who were deliberately indifferent to the violation of constitutional rights described herein.

**ANSWER: Defendants deny that any of the defendants engaged in misconduct involving Plaintiff. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 152 of Plaintiff's complaint.**

**James Soto's Damages**

153.   For 42 years, Mr. Soto was forced to live in a cage and serve out a punishment for a crime he did not commit, with the threat that he would die in prison before being exonerated.

**ANSWER: Defendants deny the allegations in paragraph 153 of Plaintiff's complaint.**

154.   Mr. Soto was required to live in conditions that were inhumane and damaging to his physical and mental health. A constant atmosphere of fear, distrust, threats, and violence from prisoners and correctional staff alike permeated the prison environment. For over four decades, Mr. Soto's life was marked by a steady stream of human rights abuses.

**ANSWER: Defendants deny the allegations in paragraph 154 of Plaintiff's complaint.**

155.   During his wrongful incarceration, Mr. Soto was stripped of the various pleasures of basic human experience, from the simplest to the most important, which all free people enjoy as a matter of right. He missed out on the ability to share holidays, funerals, and other life events with loved ones, and was deprived of the fundamental freedom to live his life as an autonomous human being.

**ANSWER: Defendants deny the allegations in paragraph 155 of Plaintiff's complaint.**

156.   Mr. Soto's four decades of wrongful incarceration forced him into a world of isolation in which he lost contact with many of his friends and family in the outside world.

**ANSWER: Defendants deny the allegations in paragraph 156 of Plaintiff's complaint.**

157.   He was deprived of meaningful opportunities for education, and worked tirelessly to create opportunities for himself despite his incarceration. He was unable to work and missed out on the lives of his family and friends.

**ANSWER: Defendants deny the allegations in paragraph 157 of Plaintiff's complaint.**

158.   Mr. Soto was robbed of opportunities to pursue his interests and passions, build relationships, and continue the community work that provided his life with meaning.

**ANSWER: Defendants deny the allegations in paragraph 158 of Plaintiff's complaint.**

159.   Mr. Soto has been deprived of all the basic pleasures of human experience, which all free people enjoy as a matter of right, including the freedom to live one's life as an autonomous human being. Mr. Soto must now attempt to make a life for himself outside of prison without the benefit of over four decades of life experiences, which normally equip adults for the task.

**ANSWER: Defendants lack knowledge or information sufficient to forma a belief about truth of the allegations in paragraph 159 of Plaintiff's complaint.**

160.   Mr. Soto lived in constant emotional anguish, never knowing whether the truth would ever come out and whether he would ever be exonerated.

**ANSWER: Defendants deny the allegations in paragraph 160 of Plaintiff's complaint.**

161.    As a result of the foregoing, Mr. Soto has suffered tremendous damage, including loss of liberty, physical injury, psychological trauma, and emotional damages, all caused by Defendants' misconduct.

**ANSWER: Defendants deny the allegations in paragraph 161 of Plaintiff's complaint.**

## LEGAL CLAIMS

## COUNT I – 42 U.S.C. § 1983

### Violation of Due Process Under the Fourteenth Amendment

162.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:   Defendants incorporate their answers to each paragraph of Plaintiff's complaint as if fully restated for their answer to paragraph 162 of Plaintiff's complaint.**

163.    As described above, Defendant Officers and ASA Defendants, while acting individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, deprived Mr. Soto of his constitutional right to due process and a fair trial.

**ANSWER: Defendants deny the allegations in paragraph 163 of Plaintiff's complaint.**

164.    As described above, Defendant Officers and ASA Defendants fabricated and solicited false evidence, including statements and testimony they knew to be

false, fabricated police reports and other evidence falsely implicating Mr. Soto, suborned perjury, obtained Mr. Soto's conviction and continued prosecution using that false evidence, and failed to correct fabricated evidence they knew to be false when it was used against Mr. Soto in his criminal case.

**ANSWER: Defendants deny the allegations in paragraph 164 of Plaintiff's complaint.**

165. As described above, Defendant Officers deliberately withheld exculpatory and impeachment evidence from Mr. Soto, his attorneys, and prosecutors, among others, thereby misleading and misdirecting Mr. Soto's criminal prosecution.

**ANSWER: Defendants deny the allegations in paragraph 165 of Plaintiff's complaint.**

166. Defendant Officers also destroyed and/or intentionally lost material evidence. In doing so, Defendant Officers violated their clearly established duties to disclose all exculpatory and impeachment information to prosecutors, to preserve material evidence, and to ensure the integrity of eyewitness identifications and statements.

**ANSWER: Defendants deny the allegations in paragraph 166 of Plaintiff's complaint.**

167. Defendant Officers concealed and/or destroyed additional evidence that is not yet known to Mr. Soto.

**ANSWER: Defendants deny the allegations in paragraph 167 of Plaintiff's complaint.**

168. Defendant Officers and ASA Defendants fabricated additional evidence not yet known to Mr. Soto.

**ANSWER: Defendants deny the allegations in paragraph 168 of Plaintiff's complaint.**

169. Defendant Officers and ASA Defendants' misconduct resulted in Mr. Soto's unjust and wrongful criminal prosecution and conviction, thereby denying him his constitutional right to a fair trial guaranteed by the Fourteenth Amendment. Absent this misconduct, the prosecution of Mr. Soto could not, and would not, have been pursued, and there is a reasonable probability that the outcome of Mr. Soto's criminal trial would have been different.

**ANSWER: Defendants deny the allegations in paragraph 169 of Plaintiff's complaint.**

170. The misconduct described in this Count was objectively unreasonable, was undertaken intentionally, with reckless indifference to the rights of others, and in total disregard of the truth and Mr. Soto's clear innocence.

**ANSWER: Defendants deny the allegations in paragraph 170 of Plaintiff's complaint.**

171. As a direct and proximate result of Defendants' misconduct, Mr. Soto suffered and continues to suffer grievous injuries, including loss of liberty, physical injury, psychological trauma, and emotional damages, as set forth above.

**ANSWER: Defendants deny the allegations in paragraph 171 of Plaintiff's complaint.**

172. The misconduct described in this Count by Defendant Officers was undertaken pursuant to the policy and practice of the City, in the manner more fully described below in Count V.

**ANSWER: Defendants deny the allegations in paragraph 172 of Plaintiff's complaint.**

## COUNT II – 42 U.S.C. § 1983

### Malicious Prosecution and Unlawful Detention (Fourth and Fourteenth Amendments)

173. Each paragraph of this Complaint is incorporated as if fully restated herein.

**ANSWER: Defendants incorporate their answers to each paragraph of Plaintiff's complaint as if fully restated for their answer to paragraph 173 of Plaintiff's complaint.**

174. As described above, Defendant Officers and ASA Defendants, acting as investigators and without probable cause to suspect Mr. Soto of any crime, individually, jointly, and in conspiracy with one another, and others unknown, as well as under color of law and within the scope of their employment, accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so and in spite of the fact that they know Plaintiff was innocent, in violation of his rights secured by the Fourth and Fourteenth Amendments..

**ANSWER: Defendants deny the allegations in paragraph 174 of Plaintiff's complaint.**

175. In so doing, Defendant Officers and ASA Defendants maliciously prosecuted Mr. Soto and caused Mr. Soto to be deprived of his liberty and detained without probable cause and to be subjected improperly to judicial proceedings for which there was no probable cause. Specifically, Mr. Soto was incarcerated from the date of his arrest until 42 years later.

**ANSWER: Defendants deny the allegations in paragraph 175 of Plaintiff's complaint.**

176. The misconduct described in this Count was objectively unreasonable, was undertaken intentionally, with reckless indifference to the rights of others, and in total disregard of the truth and Mr. Soto's clear innocence.

**ANSWER: Defendants deny the allegations in paragraph 176 of Plaintiff's complaint.**

177. As a direct and proximate result of Defendants' misconduct, Mr. Soto suffered and continues to suffer grievous injuries, including loss of liberty, physical injury, psychological trauma, and emotional damages, as set forth above.

**ANSWER: Defendants deny the allegations in paragraph 177 of Plaintiff's complaint.**

178. The misconduct described in this Count by Defendant Officers was undertaken pursuant to the policy and practice of the City, in the manner more fully described below in Count V.

**ANSWER: Defendants deny the allegations in paragraph 178 of Plaintiff's complaint.**

### COUNT III– 42 U.S.C. § 1983

### Failure to Intervene

179.   Each paragraph of this Complaint is incorporated as if fully restated herein.

**ANSWER:  Defendants incorporate their answers to each paragraph of Plaintiff's complaint as if fully restated for their answer to paragraph 179 of Plaintiff's complaint.**

180.   As described above, during the constitutional violations described herein, one or more of Defendant Officers and ASA Defendants stood by without intervening to prevent the violation of Mr. Soto's constitutional rights, even though they had the duty and the opportunity to do so.

**ANSWER: Defendants deny the allegations in paragraph 180 of Plaintiff's complaint.**

181.   Defendant Officers and ASA Defendants had reasonable opportunity as well as the duty to prevent this harm but failed to do so.

**ANSWER: Defendants deny the allegations in paragraph 181 of Plaintiff's complaint.**

182.   The misconduct described in this Count was objectively unreasonable, was undertaken intentionally, with reckless indifference to the rights of others, and in total disregard of the truth and Mr. Soto's clear innocence.

**ANSWER: Defendants deny the allegations in paragraph 182 of Plaintiff's complaint.**

183. As a direct and proximate result of Defendants' misconduct, Mr. Soto suffered and continues to suffer grievous injuries, including loss of liberty, physical injury, psychological trauma, and emotional damages, as set forth above.

**ANSWER: Defendants deny the allegations in paragraph 183 of Plaintiff's complaint.**

184. The misconduct described in this Count by Defendant Officers was undertaken pursuant to the policy and practice of the City, in the manner more fully described below in Count V.

**ANSWER: Defendants deny the allegations in paragraph 184 of Plaintiff's complaint.**

**COUNT IV – 42 U.S.C. § 1983**

**Conspiracy to Violate Constitutional Rights**

185. Each paragraph of this Complaint is incorporated as if fully restated herein.

**ANSWER: Defendants incorporate their answers to each paragraph of Plaintiff's complaint as if fully restated for their answer to paragraph 185 of Plaintiff's complaint.**

186. In investigating the Pietrowski Park murders, Defendant Officers and ASA Defendants agreed among themselves and with other individuals to act in concert in order to deprive Mr. Sot of his constitutional rights, including his rights to due process and a fair trial, as described above.

58

**ANSWER: Defendants deny the allegations in paragraph 186 of Plaintiff's complaint.**

187.     Additionally, before and after Mr. Soto's conviction, Defendant Officers and ASA Defendants further conspired to deprive Mr. Soto of favorable information to which he was lawfully entitled and which would have led to not being charged, acquittal, or faster exoneration.

**ANSWER: Defendants deny the allegations in paragraph 187 of Plaintiff's complaint.**

188.     In this manner, Defendant Officers and ASA Defendants, acting in concert with other unknown co-conspirators, conspired by concerted actions to accomplish an unlawful purpose by unlawful means.

**ANSWER: Defendants deny the allegations in paragraph 188 of Plaintiff's complaint.**

189.     In furtherance of the conspiracy, each co-conspirator engaged in and facilitated numerous overt acts, including but not limited to those set forth above— such as fabricating evidence and withholding exculpatory evidence—and was otherwise a willful participant in joint activity.

**ANSWER: Defendants deny the allegations in paragraph 189 of Plaintiff's complaint.**

190.     In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of these rights.

**ANSWER: Defendants deny the allegations in paragraph 190 of Plaintiff's complaint.**

191.    In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

**ANSWER: Defendants deny the allegations in paragraph 191 of Plaintiff's complaint.**

192.    As a direct and proximate result of the illicit prior agreement and actions in furtherance of the conspiracy referenced above, Mr. Soto suffered and continues to suffer grievous injuries, including loss of liberty, physical injury, psychological trauma, and emotional damages, as set forth above.

**ANSWER: Defendants deny the allegations in paragraph 192 of Plaintiff's complaint.**

193.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless indifference to the rights of others and with total disregard for the truth and Mr. Soto's clear innocence.

**ANSWER: Defendants deny the allegations in paragraph 193 of Plaintiff's complaint.**

194.    The misconduct described in this Count by Defendant Officers was undertaken pursuant to the policy and practice of the City in the manner more fully described in Count V.

**ANSWER: Defendants deny the allegations in paragraph 194 of Plaintiff's complaint.**

## COUNT V – 42 U.S.C. § 1983

### Policy and Practice Claim Against the City of Chicago

Count V of Plaintiff's complaint is not directed at Defendants Owen or Smeeton, and thus, no answer is required.

### COUNT VI – STATE LAW CLAIM MALICIOUS PROSECUTION

215.   Each paragraph of this Complaint is incorporated as if fully restated herein.

**ANSWER:   Defendants incorporate their answers to each paragraph of Plaintiff's complaint as if fully restated for their answer to paragraph 215 of Plaintiff's complaint.**

216.   Defendant Officers and ASA Defendants, acting as investigators, individually, jointly, and in conspiracy with one another, accused Mr. Soto of criminal activity knowing those accusations to be without genuine probable cause, and they made statements to prosecutors with the intent of exerting influence and to institute and continue the judicial proceedings.

**ANSWER: Defendants deny the allegations in paragraph 216 of Plaintiff's complaint.**

217.   Defendant Officers and ASA Defendants caused Mr. Soto to be improperly subjected to judicial proceedings for which there was no probable cause.

**ANSWER: Defendants deny the allegations in paragraph 217 of Plaintiff's complaint.**

218.   These judicial proceedings were instituted and continued maliciously, resulting in injury.

**ANSWER: Defendants deny the allegations in paragraph 218 of Plaintiff's complaint.**

219.     Statements of Defendant Officers and ASA Defendants regarding Mr. Soto's alleged culpability were made with knowledge that said statements were false and perjured. Defendants also fabricated evidence, coerced false inculpatory statements from witnesses, and withheld exculpatory evidence that would have demonstrated Mr. Soto's absolute innocence, destroyed material and/or exculpatory evidence, and used unduly suggestive identification procedures.

**ANSWER: Defendants deny the allegations in paragraph 219 of Plaintiff's complaint.**

220.     Defendant Officers and ASA Defendants were aware that, as described more fully above, no true or reliable evidence implicated Mr. Soto in the Pietrowski Park murders.

**ANSWER: Defendants deny the allegations in paragraph 220 of Plaintiff's complaint.**

221.     Defendant Officers and ASA Defendants intentionally withheld from and misrepresented to the trial prosecution facts that further vitiated probable cause against Mr. Soto, as set forth above, and withheld the facts of their manipulation and the resulting fabrications from Mr. Soto.

**ANSWER: Defendants deny the allegations in paragraph 221 of Plaintiff's complaint.**

222.    The judicial proceedings were terminated in Mr. Soto's favor when all charges against him were dropped in December 2023.

**ANSWER: Defendants deny the allegations in paragraph 222 of Plaintiff's complaint.**

223.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, and in total disregard of the truth and Mr. Soto's clear innocence.

**ANSWER: Defendants deny the allegations in paragraph 223 of Plaintiff's complaint.**

224.    As a direct and proximate result of Defendants' misconduct, Mr. Soto suffered and continues to suffer grievous injuries, including loss of liberty, physical injury, psychological trauma, and emotional damages, as set forth above.

**ANSWER: Defendants deny the allegations in paragraph 224 of Plaintiff's complaint.**

### COUNT VII – STATE LAW CLAIM

### Intentional Infliction of Emotional Distress

225.    Each paragraph of this Complaint is incorporated as if fully restated herein.

**ANSWER:   Defendants incorporate their answers to each paragraph of Plaintiff's complaint as if fully restated for their answer to paragraph 225 of Plaintiff's complaint.**

226.    The acts and conduct of Defendant Officers and ASA Defendants as set forth above were extreme and outrageous. Defendants' actions were rooted in an

63

abuse of power or authority and were undertaken with intent to cause, or were in reckless disregard of, the probability that their conduct would cause, severe emotional distress to Mr. Soto, as more fully alleged above.

**ANSWER: Defendants deny the allegations in paragraph 226 of Plaintiff's complaint.**

227.   The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless indifference to the rights of others, and with total disregard for the truth and Mr. Soto's clear innocence.

**ANSWER: Defendants deny the allegations in paragraph 227 of Plaintiff's complaint.**

228.   As a direct and proximate result of Defendants' misconduct, Mr. Soto suffered and continues to suffer grievous injuries, including loss of liberty, physical injury, psychological trauma, and emotional distress and damages, and other grievous and continuing injuries and damages as set forth above.

**ANSWER: Defendants deny the allegations in paragraph 228 of Plaintiff's complaint.**

**COUNT VIII – STATE LAW CLAIM CIVIL CONSPIRACY**

229.   Each paragraph of this Complaint is incorporated as if fully restated herein.

**ANSWER:  Defendants incorporate their answers to each paragraph of Plaintiff's complaint as if fully restated for their answer to paragraph 229 of Plaintiff's complaint.**

230.    As described above, Defendant Officers and ASA Defendants, acting in concert with other known and unknown co-conspirators, reached an agreement among themselves to frame Mr. Soto for a crime he did not commit and conspired by concerted action to accomplish an unlawful purpose by unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Mr. Soto of these rights.

**ANSWER: Defendants deny the allegations in paragraph 230 of Plaintiff's complaint.**

231.    In furtherance of the conspiracy, Defendant Officers and ASA Defendants committed overt acts and were otherwise willful participants in joint activity including, but not limited to, the malicious prosecution of Mr. Soto and the intentional infliction of emotional distress upon him.

**ANSWER: Defendants deny the allegations in paragraph 231 of Plaintiff's complaint.**

232.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless indifference to the rights of others, and with total disregard for the truth and Mr. Soto's clear innocence.

**ANSWER: Defendants deny the allegations in paragraph 232 of Plaintiff's complaint.**

233.    As a direct and proximate result of Defendants' conspiracy, Mr. Soto suffered and continues to suffer grievous injuries, including loss of liberty, physical injury, psychological trauma, and emotional damages, as set forth above.

**ANSWER: Defendants deny the allegations in paragraph 233 of Plaintiff's complaint.**

**COUNT IX – STATE LAW CLAIM WILLFUL AND WANTON CONDUCT**

234. Each paragraph of this Complaint is incorporated as if fully restated herein.

**ANSWER: Defendants incorporate their answers to each paragraph of Plaintiff's complaint as if fully restated for their answer to paragraph 234 of Plaintiff's complaint.**

235. At all times relevant herein, Defendant Officers and ASA Defendants had a duty to refrain from willful and wanton conduct in connection with the Jones murder investigation.

**ANSWER: Defendants deny the allegations in paragraph 235 of Plaintiff's complaint.**

236. As described herein, it was foreseeable to Defendant Officers and ASA Defendants that fabricating evidence, and suppressing exculpatory evidence, in addition to the other misconduct alleged above, in order to frame Mr. Soto, would inevitably result in extreme harm to him. Avoiding this injury to Mr. Soto would not have burdened Defendant Officers or ASA Defendants in any way.

**ANSWER: Defendants deny the allegations in paragraph 236 of Plaintiff's complaint.**

237. Notwithstanding that duty, Defendant Officers and ASA Defendants acted willfully and wantonly through a course of conduct that showed an utter indifference to, or conscious disregard of, Mr. Soto's rights.

**ANSWER: Defendants deny the allegations in paragraph 237 of Plaintiff's complaint.**

238.   As a direct and proximate result of Defendants' misconduct, Mr. Soto suffered and continues to suffer grievous injuries, including loss of liberty, physical injury, psychological trauma, and emotional damages, as set forth above.

**ANSWER: Defendants deny the allegations in paragraph 238 of Plaintiff's complaint.**

**COUNT X – STATE LAW CLAIM**

***Respondeat Superior***

**Count X of Plaintiff's complaint is not directed at Defendants Owen or Smeeton, and thus, no answer is required.**

**COUNT XI – STATE LAW CLAIM INDEMNIFICATION**

**Count XI of Plaintiff's complaint is not directed at Defendants Owen or Smeeton, and thus, no answer is required.**

WHEREFORE, Defendants Gregg Owen and Jack Smeeton respectfully request that this Court dismiss Plaintiff's complaint with prejudice; enter a judgment in Defendants' favor; award Defendants reasonable attorneys' fees, costs, and expenses; and award Defendants any other relief this Court deems just and reasonable.

**Jury Demand**

Defendants Gregg Owen and Jack Smeeton request a jury trial pursuant to Federal Rule of Civil Procedure 38 on all triable issues.

## DEFENDANTS' AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

Defendants Gregg Owen and Jack Smeeton, while continuing to deny liability to Plaintiff, and pleading in the alternative and without prejudice to the averments in their Answer to Plaintiff's complaint, assert the following affirmative defenses:

### FIRST AFFIRMATIVE DEFENSE

*Absolute Prosecutorial Immunity*

At all relevant times, Defendants were Assistant State's Attorneys for the Cook County State's Attorneys' Office. In this capacity, Defendants took actions intimately associated with the judicial phase of the criminal process, including but not limited to the preparation for and initiation of judicial proceedings and trial. When Defendants spoke with suspects and witnesses, took statements, and ultimately determined whether criminal charges should be approved, they performed acts toward initiating a prosecution and presenting the State's case. Because the conduct complained of on the part of Defendants is within the scope of their employment as prosecutors, within their role as advocates of the State, and arises out of the evaluation of evidence and taking statements for the purpose of initiation and prosecution of criminal charges, Plaintiff's claims are barred on the basis of absolute prosecutorial immunity.

### SECOND AFFIRMATIVE DEFENSE

*Qualified Immunity*

At all relevant times, Defendants were Assistant State's Attorneys for the Cook County State's Attorney's Office. To the extent any of their actions were not

protected by absolute prosecutorial immunity, they are protected by qualified immunity as their actions did not violate Plaintiff's constitutional rights and were at all times proper in light of clearly established law. A reasonable government official objectively viewing the facts and circumstances then confronting Defendants could have reasonably believed that the actions taken by them were objectively reasonable and were within constitutional limits that were clearly established at the time.

### THIRD AFFIRMATIVE DEFENSE

*Sovereign Immunity*

Plaintiff's claims against Defendants are really claims against State officials based upon their actions as Assistant State's Attorneys, functions that fall within the scope of their employment and authority as Assistant State's Attorneys. Plaintiff's claims against Defendants relate to the initiation of charges against, and the criminal prosecution of, Plaintiff. The State's Attorney is the constitutional officer vested with exclusive discretion in the initiation and management of a criminal prosecution. The prosecution of Plaintiff's case is, therefore, well within the scope of the State's Attorney's authority. Plaintiff's claims against Defendants are against the State of Illinois, and thus sovereign immunity shields Defendant for liability in federal court. The Illinois Court of Claims has sole and exclusive jurisdiction over Plaintiff's state law claims against Defendants.

## FOURTH AFFIRMATIVE DEFENSE

*Statute of Limitations*

Plaintiff's § 1983 claims accrued more than two years earlier than the filing of Plaintiff's complaint and, thus, these claims are time-barred.

## FIFTH AFFIRMATIVE DEFENSE

*Statute of Limitations*

Plaintiff's state law claims accrued more than one year earlier than the filing of Plaintiff's complaint and, thus, these claims are time-barred (745 ILCS 10/8-101).

## SIXTH AFFIRMATIVE DEFENSE

*Tort Immunity Act, 745 ILCS 10/2-201*

Defendants are immune from Plaintiff's state law claims under 745 ILCS 10/2-201 of the Illinois Tort Immunity Act which provides as follows: "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy whenacting in the exercise of such discretion even though abused."

## SEVENTH AFFIRMATIVE DEFENSE

*Tort Immunity Act, 745 ILCS 10/2-202*

The acts or omissions that Defendants allegedly took would have been acts or omissions in their capacity as public employees in the execution or enforcement of a law and because those acts or omissions did not constitute willful or wanton conduct, Defendants are immune from suit.

## EIGHTH AFFIRMATIVE DEFENSE

*Tort Immunity Act, 745 ILCS 10/2-204*

Because Defendants were, at all times relevant to the Plaintiff's allegations, public employees acting within the scope of their employment, they are immune from suit for any injury caused by the act or omission of another person.

## NINTH AFFIRMATIVE DEFENSE

*Tort Immunity Act, 745 ILCS 10/2-205*

Defendants are not liable for any injury caused by their adoption of an enactment, failure to adopt an enactment, or their enforcement or failure to enforce any law.

## TENTH AFFIRMATIVE DEFENSE

*Tort Immunity Act, 745 ILCS 10/2-208*

Defendants are not liable for injury caused by their instituting or prosecuting any judicial or administrative proceeding within the scope of their employment, unless they acted maliciously and without probable cause.

## ELEVENTH AFFIRMATIVE DEFENSE

*Tort Immunity Act, 745 ILCS 10/2-213*

Defendants are immune from punitive or exemplary damages under 745 ILCS 10/2-213 which provides as follows: "Notwithstanding any other provision of law, a public employee is notliable to pay punitive or exemplary damages in actions brought against the employee based on an injury allegedly arising out of an act or omission occurring within the scope of employment of such an employee serving in a position

involving the determination of policy or the exercise of discretion when the injury is the result of an act or omission occurring in the performance of any legislative, quasi-legislative or quasi-judicial function, even though abused."

## TWELFTH AFFIRMATIVE DEFENSE

*Attorney Fees*

Plaintiff is not entitled to attorney fees for his state law claims. *See Kerns v. Engelke*, 76 Ill.2d 154, 166 (Ill. 1979).

## THIRTEENTH AFFIRMATIVE DEFENSE

*Failure to Mitigate Damages*

To the extent Plaintiff failed to mitigate any claimed injuries or damages, any verdict or judgment obtained by Plaintiff must be reduced by application of the principle that Plaintiff had a duty to mitigate claimed injuries and damages, commensurate with the degree of failure to mitigate attributed to Plaintiff by the jury in this case.

## FOURTEENTH AFFIRMATIVE DEFENSE

*Res Judicata and Collateral Estoppel*

Plaintiff's claims in the Complaint are barred by the doctrines of res judicata and collateral estoppel to the extent that they involve issues or claims that were, or could have been, resolved in the underlying criminal or post-conviction proceedings.

## FIFTEENTH AFFIRMATIVE DEFENSE

*Set-off*

Plaintiff's alleged damages were negligently, intentionally, or otherwise caused in whole or in part by persons, firms, corporations, or entities other than Defendants, and as such, Defendants have a right to a dollar-for-dollar set-off of any and all settlements in this matter against any judgment rendered against Defendants.

WHEREFORE, Defendants Gregg Owen and Jack Smeeton respectfully request that this Court dismiss Plaintiff's complaint with prejudice; enter a judgment in Defendants' favor; award Defendants reasonable attorneys' fees, costs, and expenses; and award Defendants any other relief this Court deems just and reasonable.

Date: March 3, 2025

Respectfully submitted,

**Gregg Owen and Jack Smeeton**

By: */s/ Stephen D. Mehr*
_____
*Counsel for Defendants Owen and Smeeton*

James M. Lydon
Michael C. Stephenson
Matthew R. Howroyd
Stephen D. Mehr
Hinshaw & Culbertson LLP
151 N. Franklin Street, Suite 2500
Chicago, Illinois 60606
jlydon@hinshawlaw.com
mstephenson@hinshawlaw.com
mhowroyd@hinshawlaw.com
smehr@hinshawlaw.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on March 3, 2025, he electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the Northern District of Illinois using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.


*/s/ Stephen D. Mehr*